UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
: 
TAMARA MILES OGIER, as Chapter 7 Trustee : 20-CV-5163 (ARR) (CLP)
for John Ricardo Thomas, :
: NOT FOR ELECTRONIC
*Plaintiff*, : OR PRINT PUBLICATION
:
-against- :
: **OPINION & ORDER**
ROBERT RAMBADADT and THE :
RAMBADADT LAW OFFICE, :
X
*Defendants*.

--------------------------------------------------------------------

ROSS, United States District Judge:

Plaintiff Tamara Miles Ogier, the court-appointed trustee for the estate of John Ricardo Thomas, brings this action against defendants Robert Rambadadt and the Rambadadt Law Office, alleging legal malpractice arising out of Mr. Rambadadt's representation of Mr. Thomas. Plaintiff and defendants have cross-moved for summary judgment. For the reasons stated below, I grant defendants' motion and deny plaintiff's motion.

## **BACKGROUND**[1]

On July 31, 2015, Mr. Thomas was riding his motorcycle westbound on the Belt Parkway

---

[1] The facts set forth in this section are based on both parties' 56.1 Statements and the exhibits attached to their motions for summary judgment. *See* Southern and Eastern Districts of New York Local Civil Rule 56.1(a); Fed. R. Civ. P. 56(c)(1)(A) & (3). Though defendants have filed a counterstatement in response to plaintiff's 56.1 Statement, plaintiff has not filed a counterstatement in response to defendants' 56.1 Statement. I therefore deem admitted the facts from defendants' 56.1 Statement that are supported by the record and that do not contradict those from plaintiff's own 56.1 Statement. *See Suares v. Cityscape Tours, Inc.*, 603 F. App'x 16, 18 (2d Cir. 2015) (summary order) (holding that the district court "acted within its discretion in deeming all facts in [the] defendants' Local Rule 56.1 [S]tatement admitted" when the plaintiff did not submit a counterstatement); *Versace v. Versace*, 01-CV-9645 (PKL), 2003 WL 22023946, at *1 (S.D.N.Y. Aug. 27, 2003) (collecting cases).

1

in New York City when his vehicle collided with one driven by Christopher Halvey. Defs.' Mot. Summ. J. Ex. C, Attach. 1 ("Police Report"), ECF No. 30-3; Defs.' Mot. Summ. J. Ex. C 8:24–9:7 ("Halvey Dep."). As a result of this incident, Mr. Thomas sustained injuries to his leg, neck, back, and shoulders and was in a considerable amount of pain in the days that followed. Defs.' 56.1 Statement ¶¶ 3–4, ECF No. 39; Pl.'s 56.1 Statement ¶¶ 4–5, ECF No. 25-1. Shortly after he left the hospital, Mr. Thomas met with Mr. Rambadadt to discuss the possibility of Mr. Rambadadt representing him in a personal injury lawsuit. Defs.' 56.1 Statement ¶¶ 1–2; Pl.'s 56.1 Statement ¶ 3; Pl.'s Mot. Summ J., Ex 3 10:12–22, 11:3–12 ("Rambadadt Dep.").

According to Mr. Rambadadt, during this initial meeting Mr. Thomas told him that the collision occurred when Mr. Halvey was changing lanes. Defs.' 56.1 Statement ¶ 5; Rambadadt Dep. 30:5–7. Mr. Rambadadt recalls Mr. Thomas explaining "that [Mr. Thomas] believed that he may have been in [Mr. Halvey's] blind spot because [Mr. Halvey] didn't see him because [Mr. Thomas] was coming up along the passenger side rear side to [Mr. Halvey], and that when [Mr. Halvey] came over quickly, he didn't have . . . time to adjust, and then it struck him." Defs.' 56.1 Statement ¶ 5; Rambadadt Dep. 30:5–14.[2]

At the same meeting, Mr. Thomas also provided Mr. Rambadadt with a copy of the police report concerning the accident. Rambadadt Dep. 18:17–19. The report was based on Mr. Halvey's account of what happened; Mr. Thomas, who was unconscious following the accident, did not

---

[2] Though no party has raised the issue, these statements by Mr. Thomas, who died at some point prior to June 30, 2021, Defs.' Mot. Summ. J. Ex. E ¶ 24 ("Rambadadt Decl."), ECF No. 30-5, likely constitute inadmissible hearsay, see Fed. R. Evid. 802. I do not rely on the statements in coming to my decision but include them to help contextualize the parties' actions and arguments. See Pacenza v. IBM Corp., 363 F. App'x 128, 130 (2d Cir. 2010) (summary order) ("[A] court is obliged not to consider inadmissible evidence at the summary judgment stage."); Messinger v. JPMorgan Chase Bank, N.A., 126 F. Supp. 3d 376, 379 n.2 (S.D.N.Y. 2015) (declining to consider inadmissible hearsay statements in ruling on a summary judgment motion because the plaintiff had not shown that admissible evidence as to the statements would be available at trial).

2

contribute his perspective. Pl.'s 56.1 Statement ¶¶ 7–8; Defs.' Resp. to Pl.'s 56.1 Statement ¶¶ 7–8, ECF No. 36; Halvey Dep. 20:4–21:17. In the field labeled "Accident Description/Officer's Notes," the report states:

> Both [vehicles] were travelling [westbound] on Belt [Parkway], just after Rockaway [Parkway]. [Mr. Halvey's vehicle] was in the left lane and came to a stop due to heavy stop and go traffic. [Mr. Thomas's vehicle], possibly white lining, struck right side-view mirror of [Mr. Halvey' vehicle]. [Mr. Thomas] then struck the ground. [Mr. Halvey's vehicle] [sustained] left side damage.

Police Report 1. Mr. Rambadadt has explained that, in his understanding, "white lining" refers to "a person who is riding a motorcycle . . . riding along the dotted line in between, the space in between lanes and in between cars." Rambadadt Dep. 19:21–20:2; *see also* Pl.'s 56.1 Statement ¶ 7.

According to Mr. Rambadadt, he concluded at this time that Mr. Thomas did not have a viable cause of action against Mr. Halvey. Defs.' 56.1 Statement ¶¶ 6–7; Pl.'s 56.1 Statement ¶ 12. Though Mr. Rambadadt believed that the nature of Mr. Thomas's injuries "could" allow him to "seek basically a claim for personal pain and suffering," Rambadadt Dep. 21:16–22:5; *see also* Pl.'s 56.1 Statement ¶ 9; Defs.'s Resp. to Pl.'s 56.1 Statement ¶ 9, the police report would be the "controlling version" of events if Mr. Thomas filed suit, Rambadadt Dep. 20:3–5; *see also* Defs.' 56.1 Statement ¶ 6. Because the report's reference to "white lining" put Mr. Thomas at fault for the accident, Mr. Rambadadt thought any claim against Mr. Halvey would likely be dismissed "either on summary judgment[] or even a motion to dismiss." Rambadadt Dep. 19:16–21:5, 45:3–15; *see also* Defs.' 56.1 Statement ¶ 6. Mr. Rambadadt therefore declined to take Mr. Thomas's case. Rambadadt Dep. 44: 25–46:17; *see also* Defs.' 56.1 Statement ¶ 7.

At some point in 2018, however, Mr. Rambadadt discovered a "very similar" New York case in which the court stated that the issue of fault "should be left for the jury to make a

3

determination." Rambadadt Dep. 46:18 – 47:14; Pl.'s 56.1 Statement ¶ 12; Defs.' 56.1 Statement ¶ 8. Mr. Rambadadt believed that this case "breathe[d] new life" into Mr. Thomas's and reached out to Mr. Thomas to see if he still wanted to proceed. Rambadadt Dep. 47:15–48:20, 54:25–55:8. On July 31, 2018—the last day within the applicable statute of limitations—Mr. Rambadadt filed a complaint against Mr. Halvey on behalf of Mr. Thomas in Kings County Supreme Court, alleging that Mr. Halvey "was negligent, careless and reckless" in the operation of his vehicle. Pl.'s 56.1 Statement ¶ 14; Defs.' Resp. to Pl.'s 56.1 Statement ¶ 14; Defs.' Mot. Summ. J. Ex. F, ECF No. 30-6. Mr. Halvey filed his answer on December 7, 2018. Defs.' 56.1 Statement ¶ 11; Defs.' Mot. Summ. J., Ex. E ¶ 6 ("Rambadadt Decl."), ECF No. 30-5.

On or about December 17, 2018, Mr. Thomas called Mr. Rambadadt to discuss the case. Rambadadt Decl. ¶ 7. During this call, Mr. Rambadadt "felt it was a good idea to go through [Mr. Thomas's] statement of facts as it had been a few years since [they'd] gone through it." *Id.* ¶ 8. According to Mr. Rambadadt, Mr. Thomas's account on the call was different from the one he gave in 2015. *Id.* ¶¶ 8–9. Mr. Rambadadt recalls that this time, Mr. Thomas explained that the accident occurred as he was traveling westbound on the Belt Parkway and "the ebb and flow of traffic began to suddenly slow down." *Id.* ¶ 8; Defs.' 56.1 Statement ¶ 12:

> Mr. Thomas moved from the middle lane to his left and began to travel in the space between the left lane and the middle lane of traffic so he would not have to reduce his speed and he could move more quickly through the traffic, which was almost at a standstill at that point. While traveling in the space between the left lane and the middle lane, a car in the middle lane to his right, moved as if to change lanes to the left lane; Mr. Thomas quickly swerved to his left to avoid the vehicle on his right, over compensated and struck a vehicle on his left, that was the last thing he remembered before waking up in the hospital.

Rambadadt Decl. ¶ 8; *see also* Defs.' 56.1 Statement ¶ 12. In light of Mr. Thomas's revised version of events, Mr. Rambadadt was unsure whether the action against Mr. Halvey could proceed. Rambadadt Decl. ¶ 11; Defs.' 56.1 Statement ¶ 14.

4

On January 15, 2019, Mr. Halvey filed a motion to dismiss the state court suit for lack of personal jurisdiction based on improper service. Rambadadt Decl. ¶ 12; Defs.' 56.1 Statement ¶ 13; Pl.'s 56.1 Statement ¶ 16. The Kings County Supreme Court granted the motion on December 24, 2019, finding that service was improper because the envelope mailed to Mr. Halvey did not bear the legend "personal and confidential," as required by New York law. Defs.' Mot. Summ. J. Ex. H, ECF No. 30-8; Pl.'s 56.1 Statement ¶ 16; Defs.' Resp. to Pl.'s 56.1 Statement ¶ 16. Because the complaint had been filed on the last day within the statute of limitations, "the case could not be revived." Pl.'s 56.1 Statement ¶ 16; Defs.' Resp. to Pl.'s 56.1 Statement ¶ 16.

On October 29, 2020, Ms. Ogier, who was appointed the Chapter 7 trustee of Mr. Thomas's estate, *see* Defs.' Mot. Summ. J., Ex. G 1, ECF No. 30-7; Defs.' 56.1 Statement ¶ 15,[3] filed the present suit against Mr. Rambadadt and the Rambadadt Law Office, alleging legal malpractice based on Mr. Rambadadt's failure to effectuate proper service on Mr. Halvey. Compl. ¶¶ 48–60, ECF No. 1. Mr. Rambadadt entered an answer, *see* Answer, ECF No. 11, and the case proceeded to discovery, *see* Joint Status Report, ECF No. 14.

As part of the discovery process, the parties deposed Mr. Halvey. *See generally* Halvey Dep. According to Mr. Halvey, in the minutes immediately preceding the collision on July 31, 2015, he was driving in the left lane of the Belt Parkway at approximately fifty miles an hour. Halvey Dep. 9:12–14, 10:20–11:2; 12:9–10. He encountered traffic and had begun slowing down when he felt Mr. Thomas collide with his passenger-side front mirror. *Id.* at 11:9–17; 22:11–22:15. In Mr. Halvey's recollection, he was not in the process of changing lanes when the accident occurred. *Id.* at 12:11–14. Following the accident, police arrived on the scene and Mr. Halvey gave

---

[3] Mr. Thomas filed for Chapter 7 bankruptcy on July 5, 2019. Defs.' Mot. Summ. J. Ex. G 1, ECF No. 30-7; Defs.' 56.1 Statement ¶ 15.

5

them his account of what happened. *Id.* at 15:2–7. Mr. Halvey then drove home and did not receive a citation or ticket. *Id.* at 15:11–14.

During the deposition, the parties showed Mr. Halvey a copy of the police report. *See id.* at 15:15–21. Mr. Halvey read its contents and confirmed that it reflected his memory of events. *See id.* at 16:15–22:19. He noted, however, that the comment about "white lining" may have been added by the officers, as Mr. Halvey did not "know what was happening behind [him]" prior to the accident. *Id.* at 21:12–17.

At the close of discovery, both parties moved for summary judgment. *See* Pl.'s Mot. Partial Summ J., ECF No. 25; Defs.' Mot. Summ. J., ECF No. 28.

## LEGAL STANDARD

Summary judgment is appropriate when, construing the record in the light most favorable to the non-moving party, *Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). "However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (citation and quotation marks omitted). "In that event, the nonmoving party must come forward with admissible evidence

6

sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Id.* (citation and quotation marks omitted). "Where there are cross-motions for summary judgment, the [c]ourt must assess each of the motions and determine whether either party is entitled to judgment as a matter of law." *Freedom of Press Found. v. Dep't of Just.*, 493 F. Supp. 3d 251, 259 (S.D.N.Y. 2020).

## DISCUSSION

Because plaintiff is in federal court pursuant to diversity jurisdiction, *see* Compl. ¶ 12, I analyze her malpractice claim under state substantive law. *Rubens v. Mason*, 527 F.3d 252, 254 (2d Cir. 2008). "To prevail on a claim for legal malpractice in New York, a plaintiff must show: (1) that the attorney was negligent; (2) that the negligence was a proximate cause of the plaintiff's loss; and (3) proof of actual damages that were caused by the attorney's negligence." *L. Prac. Mgmt. Consultants, LLC v. M & A Couns. & Fiduciaries, LLC*, 599 F. Supp. 2d 355, 358 (E.D.N.Y. 2009); *see also Rubens*, 527 F.3d at 254–55. "To successfully plead proximate cause in a legal malpractice claim, a plaintiff must plausibly allege that, but for the malpractice, the plaintiff would have received a more advantageous result, would have prevailed in the underlying action, or would not have sustained some actual and ascertainable damage." *Abrahami v. Meister Seeling & Fein LLP*, 21-CV-10203 (JFK), 2022 WL 2066480, at *4 (E.D.N.Y. June 8, 2022) (quotation marks and citation omitted); *see also Brooks v. Lewin*, 800 N.Y.S.2d 695, 697 (N.Y. App. Div. 2005). Practically, this prong "requires the trier of fact . . . to decide a lawsuit within a lawsuit": to resolve the malpractice suit, the trier must examine "the events at issue [in the underlying suit] absent the alleged malpractice," *Prout v. Vladeck*, 316 F. Supp. 3d 784, 799 (S.D.N.Y. 2018) (quotation marks and citation omitted), and determine whether "a reasonable fact-finder in the underlying suit would have arrived at a different result but for the attorney's negligence," *Judd Burstein, P.C.*

*v. Long*, 15-CV-5295 (KPF), 2017 WL 3535004, at *6 (S.D.N.Y. Aug. 16, 2017), *aff'd*, 797 F. App'x 585 (2d Cir. 2019) (summary order) (quotation marks and citation omitted). "A failure to establish proximate cause 'mandates the dismissal of a legal malpractice action, regardless of the attorney's negligence.'" *L. Prac.*, 599 F. Supp. 2d at 359 (quoting *Brooks*, 800 N.Y.S.2d at 697).

Putting aside the question of whether Mr. Rambadadt was negligent in his representation of Mr. Thomas, Ms. Ogier has not shown the requisite causal connection between the alleged malpractice and the result of the underlying negligence suit against Mr. Halvey. To succeed on a negligence claim under New York law, a plaintiff "must prove: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Niles v. Pan Am Rys., Inc.*, 697 F. App'x 94, 95 (2d Cir. 2017) (summary order) (quotation marks and citation omitted). Regarding allegations of negligent driving specifically, New York courts have explained that drivers "are under a duty: (1) to maintain a reasonably safe rate of speed; (2) to have their automobiles under reasonable control; (3) to keep a proper lookout, under the circumstances then existing, to see and be aware of what was in their view; and (4) to use reasonable care to avoid an accident." *Hodder v. United States*, 328 F. Supp. 2d 335, 341 (E.D.N.Y. 2004) (citations omitted); *see also Daniels v. Amazon.com Inc.*, 20-CV-3708 (MKB), 2021 WL 4272542, at *4 (E.D.N.Y. Sept. 21, 2021) (same). Here, the record indicates that, at best, Mr. Thomas's negligence case would have involved conflicting evidence: Mr. Thomas's initial statement to Mr. Rambadadt suggests Mr. Halvey *may* have been negligent, but Mr. Thomas's later statement, the police report, and Mr. Halvey's testimony all support the conclusion that Mr. Halvey was not at fault for the accident. Considering this mixed record, it is impossible to say with any confidence that Mr. Thomas would have succeeded had his case moved forward. In fact, there is a distinct possibility that *all* the evidence in Mr. Thomas's case would have supported Mr. Halvey, making it unlikely

that Mr. Thomas would have prevailed—as discussed above, *see supra* n.2, Mr. Thomas's initial statement to Mr. Rambadadt appears to be inadmissible as hearsay. Either way, though, Ms. Ogier can only speculate that the result in state court *might* have been different for Mr. Thomas had his case survived the motion to dismiss for improper service. But "[s]peculation alone is insufficient to establish causation." *Allegrino v. Ruskin Moscou Faltischek, P.C.*, 21-CV-484, 2021 WL 5500084, at *2 (2d Cir. Nov. 24, 2021) (summary order); *see also L. Prac.*, 599 F. Supp. 2d at 359 (refusing "to take the considerable and purely speculative leap that the [p]laintiffs would have prevailed" in their earlier case had their attorney not been negligent and collecting cases); *Allegrino v. Ruskin Moscou Faltischek, P.C.*, 19-CV-8900 (PMH), 2021 WL 429121, at *9–10 (S.D.N.Y. Feb. 8, 2021) (same), *aff'd*, 2021 WL 5500084. Ms. Ogier thus has not established that Mr. Rambadadt's alleged negligence was the proximate cause of Mr. Thomas's loss. *See Abrahami*, 2022 WL 2066480, at *4 ("It is well established that the causation requirement is a high bar to attorney malpractice liability and seeks to [e]nsure a tight causal relationship exists between the claimed injuries and the alleged malpractice." (citation and quotation marks omitted)).

Because Ms. Ogier cannot meet one of the essential elements of her malpractice claim, defendants are entitled to summary judgment in their favor. *See Rubens*, 527 F.3d at 255 ("In order for a defendant to succeed on summary judgment, it must establish that 'that the plaintiff is unable to prove at least one of the essential elements [of legal malpractice].'" (quoting *Crawford v. McBride*, 755 N.Y.S.2d 892, 892 (N.Y. App. Div. 2003))). Ms. Ogier's motion for summary judgment, meanwhile, must be denied.

## CONCLUSION

Based on the foregoing analysis, I deny plaintiff's motion for summary judgment, grant defendants' motion for summary judgment, and direct the Clerk of Court to enter judgment

9

accordingly and close the case.

SO ORDERED.

    /s/                 
Allyne R. Ross
United States District Judge

Dated:        July 8, 2022
                Brooklyn, New York